IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| SHEILA SUMMERLIN SHAW, *et al.*, : <br> : <br> **Plaintiff,** : <br> : <br> v. : <br> : <br> TERRY GRIFFIN, *et al.*, : <br> : <br> **Defendants.** : <br> _____ : | CASE NO: 7:22-cv-66 (WLS) |

## ORDER

Before the Court is Plaintiff's Motion to Compel Deposition Testimony (Doc. 18) ("Motion to Compel") and the Defendants' Response in Opposition to Plaintiffs' Motion to Compel Deposition Testimony (Doc. 20) ("Response"). For the reasons discussed below, the Motion to Compel is **DENIED**.

I. **BACKGROUND FACTS AND PROCEDURAL STATUS**

Hoyt Summerlin ("Summerlin"), and his sister, Sheila Summerlin Shaw ("Shaw," and together with Summerlin, the "Plaintiffs"), allege § 1983 civil rights violations against Terry Griffin ("Griffin"), Jared Crosby ("Crosby"), and Anthony Brahnam ("Brahnam," and together with Griffin and Crosby, the "Defendants"), in their individual capacities. (Doc. 1) On April 13, 2021, all three Defendants were law enforcement officers employed by the Brooks County Sheriff's Office ("BCSO"). (*Id.* ¶¶ 4-6.) Allegedly, on April 13, 2021, the Defendants forcefully entered Plaintiffs' residence, without a search warrant and without probable cause. (*Id.* ¶¶ 1, 12.) The Plaintiffs allege that the Defendants had received a tip from an inmate at the Lowndes County Jail, Richard Cook ("Cook"), stating that "Stephen Hoyt" had moved into Cook's residence at 74 Bay Meadow Drive ("Residence"), without Cook's permission and that Hoyt was cooking meth at the Residence. (*Id.* ¶ 11.) Allegedly, the

Defendants did not corroborate Cook's statement, and it was later determined that Cook had a rent dispute with the people renting the Residence. (*Id.* ¶ 12.)[1]

Plaintiffs allege that the Defendants knocked on the front door of their residence. Summerlin opened the door a crack and saw that it was not the person he was expecting. As he was dressed only in boxer shorts, he shut the door explaining that he would get dressed and come back. (*Id.* ¶ 13.) The Defendants were not in uniform, did not identify themselves as law enforcement officers, nor did they display a warrant. (*Id.* ¶ 14.) Plaintiffs further allege that while Summerlin was getting dressed, one of the Defendants began banging his gun on a bedroom window demanding that Shaw open the front door. Another Defendant was attempting to reopen the front door with a shovel. (*Id.* ¶ 15.) When Summerlin came back from dressing and started opening the door, one of the Defendants pulled the door open, pushed Summerlin back, and all Defendants forcefully rushed inside the Residence. (*Id.* ¶¶ 14-16.) One of the officers allegedly slammed Summerlin's head onto the coffee table (*Id.* ¶ 17), scared Shaw and refused to let her use the bathroom which caused her to urinate on herself because of her fright (*Id.* ¶ 18.) Defendants conducted a search and Plaintiffs were allegedly held at gunpoint during the search. No drugs were found. (*Id.* ¶ 19.)

In the Motion to Compel, Plaintiffs state that during his deposition, Defendant Griffin disclosed a witness whom, he suggests, justifies Defendants' entry into Plaintiffs' Residence. However, claiming that the witness's identity is protected by the law enforcement privilege, Griffin refused, and continues to refuse, to disclose the identity of the witness (hereinafter the "Unidentified Witness"). Plaintiffs contend the Unidentified Witness is a fabrication by Defendants. Plaintiffs state:

> It appears likely that the defendants will offer this unidentified informant's hearsay in an attempt to justify their entry into the home. That goes to the heart of the Fourth Amendment claims in this case. In other words, the defendants are arguing that the law enforcement privilege shrouds their impromptu witness in secrecy, and will argue that the witness saves them from civil liability.
>
> The timing of the disclosure of this unidentified witness is suspect. Whether this person even exists is suspect. Consider that there was no discovery produced to date indicating that this person even existed. The other defendants

---

[1] It is unclear whether Plaintiffs are the parties renting the home located at 74 Bay Meadow Drive or whether they own the Residence. In any event, the Plaintiffs were residing at 74 Bay Meadow Drive when the incident giving rise to their complaint occurred.

testified that Cook sent a letter to BCSO, the defendants called Cook, and they decided to perform a 'knock and talk' at the plaintiffs' residence. Period.

(Doc. 18 at 7.)

During his deposition, Defendant Griffin was asked to identify all encounters he had with anyone or anything having to do with the Residence. Griffin testified:

> Q. . . . What's the next [thing] you did having anything to do with that address there at 74 Bay Meadow?
>
> A. I got a – talked to a person that I knew that knew that area, and was told that there was a lot of traffic in and out all times of the night, staying just minutes and leaving; all times of the – mostly during the evening, but some daytime traffic, too.
>
> Q. Who was that?
>
> A. I cannot say, sir. I wish not to say that due to the safety of the person that told me; okay?
>
> Q. You need to tell me.
>
> A. I'm not going to. And it's for the safety of that person, sir; okay?
>
> Q. It is not okay.
>
> A. And, plus, if I told that person -- if I told that person, sir, that's going to hurt my reputation as somebody that's going to give somebody up. And how can I work in the streets like that if people don't trust me when they tell me things?
>
> Q. Are you done?
>
> A. Yes, sir.
>
> Q. You have to answer the question.
>
> A. I'm not going to, sir.
>
> Q. Okay. We'll adjourn your . . . deposition; we'll get an order from the judge and we'll reconvene.
>
> A. I will give it to the judge in-camera, more than happy to.

(Doc. 18-1, Griffin Dep. 31:7—32:8.)

Plaintiffs contend that Griffin's deposition is the first time they learned of an informant other than Richard Cook and that the report of the April 13, 2021 incident does not mention any other informant or event that prompted Defendants to investigate whether narcotics were being manufactured or sold at the Residence. (Doc. 18 at 3.) Plaintiffs further state that the Unidentified Witness was not disclosed in Defendants' written discovery responses. Nor was

3

the Unidentified Witness disclosed in the depositions of Defendants Branham or Crosby. (*Id.* at 6.) Plaintiffs anticipate that Defendants will rely on this Unidentified Witness' statements to justify Defendants' entry into their home (or to support a claim of qualified immunity). (*Id.*) Defendants do not disclaim reliance on this Unidentified Witness but continue to assert that they do not have to disclose his/her identity.

When asked to verify statements contained in the report prepared with respect to this incident, Defendant Crosby testified:

> Q. . . . "Sergeant Griffin explained our presence there [at the Residence], and it did not take long before we realized the information that we received [from Cook] was lies and fabrications." Is that right? It's accurate?
>
> A. Yes, sir.
>
> Q. Then it says, "We verified paperwork that Hoyt was not squatting or criminal trespassing on the property; therefore, we left." Is that right?
>
> A. Yes, sir.

(Doc. 18-2, Crosby Dep. 83:4—14.)

According to Defendant Branham, the Defendants did not apply for a search warrant because they all knew they did not have enough to obtain a search warrant. (Doc. 18-3, Branham Dep. 26:3—15.)

In their Response, Defendants rely heavily on the argument that disclosing the Unidentified Witness's identity will put such witness in danger. In support of that assertion, Defendants refer to the several statements in Summerlin's deposition where he admits to being in bar fights, shooting an individual in the knee cap, hitting an individual with a baseball bat, and other incidents of violence. (*See* Doc. 20 at 2-3.) Defendants quote the following from the deposition:

> Q. So you – just to be clear, I guess, is it a fair characterization to say that you're willing to do whatever it takes to protect other people close to you?
>
> A. To a point, yes, sir.

(Doc. 20 at 3.) The following question is also relevant, but not quoted by Defendants:

> Q. And what is that point?
>
> A. I'm just – I'm learning how to be a citizen. You know, I've never been one. Now I'm going to dial 911.

(Doc. 20-2 Hoyt Dep. 60:12—15.)

4

In addition to the Unidentified Witness at issue in the Motion to Compel, Griffin testified during his deposition that he received information from another individual relating to the Residence. In describing that incident, Griffin testified:

> A. I had – within three months of us going to his [Summerlin's] home, I was on the BP station at Highway 133 when a lady approached me and asked me, "Are you Terry Griffin?" I said, "Yes, ma'am, I am." She said, "You need to watch the house on Bay Meadow Drive. It's the last house on the right, being a trailer. There's a lot of traffic going and coming from that location staying only a few minutes at all times of the day and night." I asked her if she knew who lived there. She told me she did not.
>
> Q. Who was this lady?
>
> A. I have no idea.

(Doc. 20 at 3; Doc. 20-2 Griffin Dep. 25:4—17.) The Court refers to this unknown female witness as the "Unknown Female").[2]

After reviewing the Motion to Compel, the Response, and arguments contained in the parties' briefs, the Court determined that an evidentiary hearing was necessary. A rescheduled[3] evidentiary hearing was held on November 16, 2023. (Docs. 21, 22, 25). At the conclusion of the evidence, the Court entered an Order (Doc. 28) providing the parties with time to confer and attempt to resolve the Motion to Compel or to file briefs in support of their arguments. On December 7, 2023, the parties filed a Notice of Intent to Rely on Briefs on Motion to Compel Deposition Testimony (Doc. 32) notifying the Court that the parties wished to rely on their briefs and the hearing exhibits and requesting the Court resolve this dispute.

---

[2] In reviewing the Motion to Compel and Response, it was unclear to the Court whether this incident where Griffin was approached by the Unknown Female occurred within three months before or within three months after the April 13, 2021 incident in this case. It was further unclear whether the Residence is the last house on the right on Bay Meadow Drive as described by the Unknown Female.

[3] The evidentiary hearing was originally set for October 24, 2023 (Docs. 21, 22). However, counsel for the parties appeared at that hearing without any witnesses and intending to present arguments. The Court rescheduled the hearing to November 16, 2023, requiring that Griffin "shall appear at the continued hearing to provide evidence regarding the information obtained from, and the events surrounding, Mr. Griffin's discussion(s) with the confidential informant who is the subject of Plaintiffs' Motion [to Compel]." (Doc. 25 at 1.)

## II. FACTUAL FINDINGS

Defendant Griffin was the only witness to testify at the November 16, 2023 hearing. Griffin testified that he has worked in law enforcement for thirty-five years. He has been employed at the BCSO since 2010, and he is currently a narcotics agent with BCSO. Griffin was previously employed at the Lowndes County Sheriff's Office ("LCSO"). Griffin provided the following sequence of discussions with the Unknown Female, Cook, and the Unidentified Witness as leading up to the search of the Residence:

1. The first information any of the Defendants obtained relating to possible illegal activities occurring at the Residence came from the Unidentified Female who approached Griffin at the BP gas station. This witness was first disclosed to the Plaintiffs by Griffin at his deposition. During the November 16, 2023 hearing, Griffin clarified that this encounter occurred about three months prior to the Defendants' search of the Residence. Griffin also clarified that although the Unidentified Female did not know the address, the Residence matches her description as the last house on the right-hand side of Bay Meadow Drive. Griffin testified that the location of the Residence made it almost impossible to conduct a surveillance. Therefore, to follow up on the information provided by the Unidentified Female, officers drove by the Residence several times. However, no evidence of illegal activity was observed.

2. The Defendants then received the information from Cook asserting that a "Stephen Hoyt" was illegally occupying the Residence and cooking meth. Defendant's Exhibit 1 introduced into evidence at the November 16, 2023 hearing, reflects the information from Cook was received on April 12, 2021. (*See* Incident Report, Doc. 31 at 3.)

3. After receiving the information from Cook, Griffin testified that he made a phone call to the Unidentified Witness. Griffin stated that he contacted the Unidentified Witness because he knew the person was very familiar with the area in which the Residence is located. Griffin reiterated his deposition testimony that the Unidentified Witness told him that there was a lot of traffic in and out of the Residence at all times of the day and night, but mostly during the evening. Griffin stated this information was consistent with what the Unknown Female had told him. Griffin further stated that in his experience as a law enforcement officer, the same information coming from two different witnesses means that there possibly was drug

6

activity going on at that location due to the amount of traffic coming and going at all times of the day and night.

With respect to Griffin's prior experience with the Unidentified Witness, Griffin testified that he has known this person since the mid-1990s when Griffin was employed by the LCSO. Griffin stated that the Unidentified Witness had given him information relating to drug activities occurring in Brooks County. Griffin turned over the information to the BCSO. He does not know the results of any investigation conducted by the BCSO in reliance on the information provided by the Unidentified Witness. Griffin testified that the Unidentified Witness does in fact exist and is a real person. Griffin further denied that the Unidentified Witness is involved in trafficking methamphetamine with Summerlin. Nor did the Unidentified Witness purchase methamphetamine from Summerlin. Based on Summerlin's past violent history, Griffin testified that he is very concerned that the Unidentified Witness would be in danger of physical harm by Summerlin if Griffin is required to disclose the identity of this witness.

On further questioning by the Court, Griffin testified that the Unidentified Witness has never worked for Griffin as an active informant. Nor has the Unidentified Witness ever received any monetary or other benefits from Griffin in the past for providing information to Griffin. The only information relating to this case provided to Griffin by the Unidentified Witness is that there were vehicles at the Residence all time of the day and night and the vehicles stayed for short periods of time. Griffin testified that the Unidentified Witness did not provide Griffin with any specific information about any actual verifiable drug transactions occurring at the Residence.

### III.   INFORMER'S PRIVILEGE

Defendants contend that, as law enforcement officers, they are entitled to rely on the informer's privilege to protect the Unidentified Witness's identity. In *Roviaro v. United States*, 353 U.S. 53 (1957) the Supreme Court discussed the purpose and protections afforded by this privilege, as well as the limitations on its use, stating:

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement

7

> of that law. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.
>
> The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. . . .
>
> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. *Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.* . . .[4]
>
> . . . .
>
> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. . . .

*Roviaro*, 353 U.S. at 59–62 (emphasis added) (citations omitted) (footnotes omitted). "*Roviaro* was a criminal case, but it is clear that the informer's privilege exists in civil cases as well, and, as in criminal cases, must give way in certain circumstances." *Suarez v. United States*, 582 F.2d 1007, 1010-11 n.4 (5th Cir. 1978) (citations omitted).[5]

> The Eleventh Circuit has focused on three factors in the balancing test: (1) the extent of the informant's participation in the criminal activity, (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and (3) the government's interest in nondisclosure.

---

[4] In *Roviaro*, the Supreme Court further stated:

> Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication.

*Roviaro*, 353 U.S. at 61. However, in *McCray v. State of Illinois*, 386 U.S. 300 (1967), the Supreme Court recognized that there was no probable cause issue in *Roviaro*, and thus the above quote was dictum. *McCray*, 386 at 312-312 n.11. In addition, the *McCray* Court noted that "an absolute rule of disclosure [of a confidential informant's identity] for probable cause determinations would conflict with the case-by-case approach upon which the *Roviaro* decision was based." *Id.*

[5] The United States Court of Appeals for the Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

8

*United States v. Young*, 161 F. App'x 922, 926–27 (11th Cir. 2006) (per curiam) (citing *United States v. Tenorio-Angel*, 756 F.2d 1505, 1509 (11th Cir. 1985)). Further,

> To properly balance the interests in this case, it is necessary to know the substance of the information possessed by the informant-witness. If his recital of events is substantially similar to [the Government's witness], disclosure would not be necessary. On the other hand, if his testimony would lend credence to [defendant-appellant's] theory . . . , [defendant-appellant's] request for disclosure should be granted.

*United States v. Freund*, 525 F.2d 873, 877 (5th Cir. 1976). An informants may participate in criminal activities at various levels.

> At one extreme are those cases such as *Roviaro* itself, in which the informant played an active and crucial role in the events underlying a defendant's or litigant's potential criminal or civil liability. In these cases, disclosure and production of the informant is in all likelihood required to ensure a fair trial. At another extreme are those cases in which the informant was not an active participant, but rather a mere tipster. In those cases, disclosure of the informant's identity is not required by *Roviaro*. A third group of cases falls in between these two extremes. In these cases, there is a distinct possibility that the defendant might benefit from disclosure, but the Government claims a compelling need to protect its informant. In cases such as these, disclosure is not necessarily required, but we have approved and in two cases have actually required an in camera proceeding to determine and balance against each other the importance of the informant's testimony to the defendant's case and the strength of the Government's interest in maintaining the informant's anonymity

*Suarez*, 582 F.2d at 1011-12 (citations omitted). Finally, "a court need not entertain conclusory and unsubstantiated allegations of fabrication of evidence." *Kingsland v. City of Miami*, 382 F.3d 1220, 1227 n.8 (11th Cir. 2004) (citing *Cunningham v. Gates*, 229 F.3d 1271, 1291–92 (9th Cir. 2000) (dismissing plaintiffs' conclusory allegations of fabrication where the plaintiffs produced "not an iota of evidence" to suggest that the defendant officers fabricated evidence)).

## IV.  DISCUSSION

With the above facts and law in mind, the Court addresses the merits of the parties' arguments concerning disclosure of the Unidentified Witness's name and contact information. The Court advises the parties that the findings and rulings made herein relate to this single issue presently before this Court. Such findings and rulings *do not* relate to, or reflect, the Court's view or thoughts as to the underlying merits of this case.

The Court starts with the three factors necessary when balancing the interest of the Defendants in protecting the Unidentified Witness and the future flow of information from such witnesses and the Plaintiffs' interest in obtaining information that is essential to a fair determination of their cause of action.

Summerlin's deposition testimony reflects that he is making an effort to control his violent tendencies. However, given his own testimony as to his violent history, it is not unreasonable for the Defendants, as law enforcement officers, to have concerns for the Unidentified Witness' safety. Therefore, the Court finds that the Defendants have an interest in not disclosing the identity of the Unidentified Witness. Further there are no allegations that the Unidentified Witness participated in any manner in a criminal activity with either Plaintiff. The only testimony which the Unidentified Witness may provide is that there were vehicles at the Residence all time of the day and night and the vehicles stayed for short periods of time. The Unidentified Witness does not have any information about actual, verifiable drug transactions occurring at the Residence. The testimony that the Unidentified Witness may provide, is no more than that already provided by Griffin. *See Freund*, 525 F.2d at 877 (where informant's recital of events is substantially similar to law enforcement officer's testimony, disclosure is not necessary).

The Plaintiffs have not shown how knowing the identity of the Unidentified Witness is essential to their claims and defenses. Their entire basis for demanding the identity of the Unidentified Witness is that they believe Griffin fabricated the existence of such witness. However, Plaintiffs have not provided one iota of evidence that Griffin's testimony, either during his deposition or at the hearing, was false. The Court found Griffin to be a credible witness. The only connection the Unidentified Witness has with this case is a single phone call providing a statement of his opinion that there was a lot of traffic day and night, staying for short periods of time at the Residence. The Unidentified Witness did not, or at least Griffin did not, provide the timeframe in which the witness saw the traffic. Nor did the witness provide any information of actual, verifiable drug activity occurring at the Residence. The Court finds that the Unidentified Witness falls into the category of a mere tipster which the Defendants are not required to disclose. *See Suarez*, 582 F.2d at 1011. The Court further finds that the value of the Unidentified Witness's testimony to the Plaintiffs' cause of action is

minimal when compared to the Defendants' interest in preserving the Unidentified Witness's anonymity. As such, an in camera proceeding is unnecessary for the Court to perform the balancing task properly. *Suarez*, 582 F.2d at 1012 (finding in camera proceeding unnecessary where potential value of informant's testimony is of marginal weight compared to the defendant's interest in preserving his anonymity.)

### V. CONCLUSION

Accordingly, for the foregoing reasons and based upon the totality of the circumstances as shown by the evidence presented, Plaintiffs' Motion to Compel (Doc. 18) is **DENIED**.

If the parties need additional time for discovery and/or dispositive motions, they shall confer and provide the Court with an appropriate motion identifying any deadlines that should be extended and the length of time the parties request for an extension, if any. Any such motion shall be filed on or before **Tuesday, January 16, 2024**.

**SO ORDERED**, this 2nd day of January 2024.

<u>/s/ W. Louis Sands</u>
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**